# D.

## Glidden vs. Terranova

### 427  N.E.  2d  1169

### 12  MASS.  APP.  CT.  597  (1981)

FAR ADD. 12

Glidden *v.* Terranova.

p. Ct. 591

U.S. 295
en charged
*riot Co.* v.
ndidate as
: *Times* test
s disregard
ie v. *Essex*
lthough we
e note with
dum of his
gment not-
he evidence
warranted.
*ntral Bdcst.*

iade by Gil-
es were not
us to decide
: by the pub-
properly ex-

*lefendants*

ROGER C. GLIDDEN & another[1] *vs.* DOMENIC S. TERRANOVA.

Essex.   May 15, 1981. — November 13, 1981.

Present: BROWN, ROSE, & DREBEN, JJ.

*Negligence,* Attorney, Expert opinion, Burden of proof. *Attorney at Law,* Negligence.

In an action to recover damages for malpractice by an attorney, the evidence, viewed in the light most favorable to the plaintiffs, was such that no expert testimony was required to establish whether an attorney-client relationship existed or whether the attorney's conduct violated the standard of reasonable care and diligence, and consequently it was error to allow the attorney's motion for a directed verdict based upon the absence of expert testimony. [598-600]

In an action by former clients of an attorney to recover damages for malpractice in the defense of prior litigation, the attorney had the burden of proving that his former clients had no defense to the underlying litigation, and consequently it was error to allow the attorney's motion for a directed verdict in the malpractice proceeding based upon the failure of the former clients to prove the attorney's negligence to be a proximate cause of their damages. [600-601]

CIVIL ACTION commenced in the Superior Court Department on November 20, 1978.

The case was heard by *Doerfer,* J.

*Bertram W. Allen (Timothy Allen* with him) for the plaintiffs.

*Stephen R. Duly* for the defendant.

ROSE, J.   The plaintiffs Glidden, husband and wife, brought suit against the defendant Terranova, an attorney, alleging several claims in tort and contract arising from the defendant's representation of them in a prior legal proceeding.   The plaintiffs had been sued in District Court by a real estate broker seeking to recover a commission earned in the

[1] Evelyn M. Glidden.



*FAR ADD. 13*

Glidden *v.* Terranova.

sale of the plaintiffs' home. They now contend that the defendant promised to represent them and remove the action to the Superior Court for a jury trial, and that the defendant's failure to do so resulted in default judgments and, in subsequent supplementary proceedings, the arrest and imprisonment of Mr. Glidden for contempt in not paying the judgment. At the trial below, the plaintiffs presented evidence to support their claim, after which the defendant filed a motion for a directed verdict. The issues argued on appeal are whether the Superior Court judge was justified in allowing the motion for a directed verdict on the grounds that (1) the plaintiff did not offer expert testimony to establish either an attorney-client relationship or that the defendant violated the standard of care owed by a lawyer to his client in these particular circumstances, and (2) the plaintiffs' evidence could not support a conclusion that the defendant's inaction was a proximate cause of the damages alleged by the plaintiffs. We hold that the evidence was sufficient to require denial of the motion for a directed verdict and reverse the judgment of the Superior Court.

1. An attorney owes his client an obligation to exercise a reasonable degree of care and skill in the performance of his legal duties. *Caverly* v. *McOwen*, 123 Mass. 574 (1878). *McLellan* v. *Fuller*, 226 Mass. 374 (1917). Because the question whether an attorney has exercised sufficient legal care is one of fact for the jury to decide, expert testimony is generally necessary to establish the standard of care owed by an attorney in the particular circumstances and the defendant's alleged departure from it. Nolan, Tort Law § 186, at 299 (1979). Barry, Legal Malpractice in Massachusetts, 63 Mass. L. Rev. 15, 17 (1978). However, expert testimony is not essential where the claimed legal malpractice is so gross or obvious that laymen can rely on their common knowledge or experience to recognize or infer negligence from the facts. See *Gilbert* v. *Williams*, 8 Mass. 51, 57 (1811) ("whenever an attorney disobeys the lawful instructions of his client, and a loss ensues, for that loss the attorney is responsible"); *Varnum* v. *Martin*, 15 Pick. 440

*FAR. ADD* *14*


A14

Glidden v. Terranova.

(1834) (evidence found sufficient to sustain a verdict against the attorney on the ground of negligence despite the apparent lack of expert testimony). The rule that expert testimony is not always required to prove legal malpractice has been adopted in other jurisdictions, see, e.g., *Wright* v. *Williams*, 47 Cal. App. 3d 802 (1975); *Collins* v. *Greenstein*, 61 Haw. 26 (1979); *House* v. *Maddox*, 46 Ill. App. 3d 68 (1977); *Central Cab Co.* v. *Clarke*, 259 Md. 542 (1970); *Hill* v. *Okay Constr. Co.*, 312 Minn. 324 (1977); *Olfe* v. *Gordon*, 93 Wis. 2d 173 (1980), and is consistent with the approach followed in Massachusetts in the medical malpractice context. See *Polonsky* v. *Union Hosp.*, 11 Mass. App. Ct. 622, 624 (1981), and cases cited therein.

The plaintiffs here testified that the defendant agreed to represent them in an outstanding legal action and that all legal papers relative to that action were delivered to the defendant. According to their testimony, the defendant promised to remove the action to the Superior Court for a jury trial and later informed the plaintiffs that he had removed the action. The plaintiffs further testified that they did nothing about the action in reliance on the defendant's representation that "everything is well in hand" and that he would "straighten the whole thing out." Actually, the defendant neither filed an answer nor removed the action, a fact which came to the plaintiffs' attention only after default judgments were entered in the District Court. The evidence indicates that the defendant was notified in advance, yet failed to appear at both the supplementary process hearing and the contempt hearing which resulted in Mr. Glidden's arrest and imprisonment. Finally, the plaintiffs testified that they telephoned the defendant after Mr. Glidden was committed for contempt, at which time they were told by a secretary that the defendant was in conference and could not be disturbed. According to their testimony, the sole response to the plaintiffs' request for legal assistance was a subsequent telephone call from the defendant's secretary to Mrs. Glidden suggesting that they "raise bail" and seek other counsel. Viewed in the light most

*FAR. ADD. 15*

Glidden v. Terranova.

favorable to the plaintiffs, *DiMarzo* v. *S. & P. Realty Corp.*, 364 Mass. 510, 514 (1974), the evidence was such that expert testimony was not required to determine whether an attorney-client relationship existed or whether the defendant's conduct violated the standard of reasonable care and diligence. Accordingly, it was error for the court to allow the defendant's motion for a directed verdict on the ground that no expert testimony was offered.

2. Where a party who was the plaintiff in a legal action sues his attorney for negligence in the prosecution of that action, he must establish that he probably would have succeeded in the underlying litigation were it not for the attorney's negligence. *McLellan* v. *Fuller*, 226 Mass. at 378; *Siano* v. *Martinelli, post* 946 (1981); *Hurd* v. *DiMento & Sullivan*, 440 F.2d 1322, 1323 (1st Cir. 1971). However, there are no cases in Massachusetts which answer the question of where the burden of proof lies in a malpractice action when the defendant-attorney allegedly failed to defend in the underlying litigation. The trial court in *Salisbury* v. *Gourgas*, 10 Met. 442 (1845), following the rule in an early English case, *Godefroy* v. *Jay*, 7 Bing. 413, 131 Eng. Rep. 159 (1831), imposed the burden on the attorney of proving that the client had no defense, but the propriety of this ruling was not addressed on appeal. We hold that the attorney should indeed bear the burden of proof in such a case, for "since the client had no obligation 'to prove his case' in the underlying action (he could have simply required the plaintiff to prove his case), he should not shoulder the burden of proving a defense in the malpractice action." Nolan, Tort Law § 182, at 297 (1979). See Barry, Legal Malpractice in Massachusetts, 63 Mass. L. Rev. 15, at 17 n.31 (1978) ("to require the client to prove that the underlying action was defensible requires him to establish in the malpractice suit that which he would not have been required to prove in the underlying action"). Because the plaintiffs in the present case did not have the burden of proving that they would have prevailed in the underlying litigation if the defendant had not been negligent, it was error for the

*FAR. ADD.* *16*

A16

Glidden v. Terranova.

Superior Court judge to allow the defendant's motion for a
directed verdict on the ground that the plaintiffs did not
prove the defendant's negligence to be a proximate cause of
their damages.

*Judgment reversed.*

FAR. ADD. 17

# E.

## **<u>Pongonis vs. Saab</u>**

## **396  MASS.  1005  (1985)**

FAR. ADD. 18

ions.

said that he may exclude a record
each a witness or defendant who
, the defendant is most intense."
6, 750 (1977). *Commonwealth* v.
wever, if a judge admits a record
discretion to exclude it, he has
recognize that he had discretion.
Mass. App. Ct. 948, 949 (1983).
ss. 466, 470 (1984), we ruled for
n in admitting a record of conviction
re set forth the criterion by which
if discretion in providing that the
ther there was an abuse of discretion
tion because the danger of unfair
e of the evidence of a prior convic-
*Id.*

ounsel: "I think it is germane . . .
ty and this case, [the defendant] is
case, he is alleged to have been in
e stolen, *so I think that if I were a
relationship between the receiving
re the Court*, so I would deny the
f the defendant by the use of these
d).

ed that he had discretion to exclude
rfectly clear that he admitted them
crime of which the defendant was
is then standing trial. This similarity
which the language of *Maguire* is
surmise that if a defendant earlier
itted the crime for which he is being
lar. See *Commonwealth* v. *DiMarzo*,
essey, J., concurring). It would seem
crimes to be the basis for admission
a reason for excluding them. In the
: convictions to stand.

*Judgments reversed.*
*Verdicts set aside.*

or Public Counsel Services, for the

District Attorney, for the Common-

nd battery.

ALBERT PONGONIS vs. LOUIS M. SAAB. December 11, 1985. *Negligence*,
Attorney. *Attorney at Law*, Malpractice. *Evidence*, Legal malpractice, Pro-
fessional standards.

In this case Pongonis alleges that, by reason of the negligence of Saab
(an attorney), Pongonis realized only $3,000 cash in settlement of a contract
action which had a value many times greater than this figure to Pongonis.
At the close of Pongonis' evidence before a Superior Court jury, the judge
allowed Saab's motion for a directed verdict. Pongonis appealed and this
court ordered direct review on its own motion. Both parties have argued,
we think correctly, that the precise issue is whether Pongonis' case was
fatally deficient because no expert testimony was adduced on the issue of
Saab's alleged negligence.

The parties agree that Saab acted as attorney for Pongonis in handling
a contract action brought by Pongonis against Symphonic Radio & Electronic
Corporation (Symphonic). Pongonis and Symphonic had agreed that Pon-
gonis was to purchase all Symphonic's second-quality merchandise at a
price of cost plus 10%. It was shown that Symphonic terminated the arrange-
ment with Pongonis. Pongonis asserted that the termination was wrongful,
and that, by reason of Saab's advice that Symphonic "was going broke,"
Pongonis settled the matter for $3,000. The issue of the financial condition
of Symphonic was disputed in the evidence. There was also other evidence,
again disputed, that purported to show, among other things, that it was
Pongonis who violated the contract, that the contract by its terms was
terminable at will by Symphonic, and that these factors were reasons ad-
vanced by Saab to Pongonis for settling the case.

An attorney owes his client an obligation to exercise a reasonable degree
of care and skill in the performance of his legal duties. *McLellan* v. *Fuller*,
226 Mass. 374, 377-378 (1917). *Glidden* v. *Terranova*, 12 Mass. App. Ct.
597, 598 (1981). Expert testimony is generally necessary to establish that
the attorney failed to meet the standard of care owed by an attorney in a
particular case. *Fall River Sav. Bank* v. *Callahan*, 18 Mass. App. Ct. 76,
82 (1984). *Brown* v. *Gerstein*, 17 Mass. App. Ct. 558, 566 (1984). *DiPiero*
v. *Goodman*, 14 Mass. App. Ct. 929, 929-930 (1982), cert. denied, 460
U.S. 1029 (1983). *Glidden* v. *Terranova, supra.* Although expert testimony
is not essential where the claimed legal malpractice is so gross or obvious
that laymen can rely on their common knowledge to recognize or infer
negligence, see, e.g., *Varnum* v. *Martin*, 15 Pick. 440, 442 (1834) (although
expert testimony apparently lacking, evidence sufficient to uphold verdict
against attorney for negligence); *Gilbert* v. *Williams*, 8 Mass. 51, 57 (1811)
("[W]henever an attorney disobeys the lawful instructions of his client, and
a loss ensues, for that loss the attorney is responsible"), this is not such a
case. Clearly, on the issue of Saab's negligence, the jury here needed the
assistance of expert opinion.

*Judgment affirmed.*

*Albert Pongonis*, pro se.
*Andre A. Sansoucy* (*Richard L. Neumeier* with him) for the defendant.

*FAR·ADD· 19*

*CROSS - REFERENCE OF*
*(BHISD) VIOLATIONS*                        *PAGE 7*

## COUNTERCLAIMS

15)   The Tenants assert by way of counterclaim against the Landlord, pursuant to Rule 5 of the Uniform Summary Process Rules and Mass.R.Civ.P. 13(b) the following counterclaims as affirmative defenses to the Landlord's claim for possession, and for their own damages:

## FIRST COUNTERCLAIM: INTERFERENCE WITH QUIET ENJOYMENT OF THE PREMISES

16)   The Landlord directly or indirectly interfered with the Tenants' quiet enjoyment of the premises by failing to provide and maintain the premises in compliance with applicable law.

17)   As a result, the Tenants claim the greater of actual damages, or three month's rent in the amount of $2,400.00 for each breach of his quiet enjoyment, plus the costs of this action and reasonable attorney's fees.

## SECOND COUNTERCLAIM: BREACH OF WARRANTY OF HABITABILITY

18)   The Landlord has expressly or impliedly warranted to provide and keep the premises in good repair, in compliance with all applicable laws and regulations, and in all other respects fit for habitation. Because of the following conditions, the Landlord has breached the implied warranty of habitability:

*BHISD*
*DOCUMENTS*
*CROSS - REFERENCED*
*P.P.*
*1 and 2*

   a)   The windows throughout the unit are in disrepair with rotted window sills and damaged windows;
   b)   The hallway and living room floor is in disrepair with badly worn furnish and crumbling rug pad;
   c)   The kitchen floor is in disrepair with missing tiles under the kitchen window;
   d)   The stove and oven are defective;
   e)   The walls throughout the unit are in disrepair with badly damaged walls, and holes ;
   f)   The kitchen, living room, and hall ceilings are in disrepair and have stains, holes and peeling paint;
   g)   Several electrical outlets are defective and the kitchen counter outlet is not grounded;
   h)   The hallway wall is missing an access panel door for the tub/shower;
   i)   The unit does not have smoke detectors; and
   j)   The platform on the balcony of the fire escape is not secure.

*P. 3*

19)   As a result of the Landlord's breach of warranties, the Tenants suffered damages in the amount of the difference between the fair market value of the premises in good repair and in compliance with all applicable laws and regulations and the

*FAR. ADD. 20*

*A APP. 130*

29th July 2003

# Commonwealth of Massachusetts

*page 1 of 2*

SUFFOLK, ss.

REFERENCE NO. *H.1.03.4473*

To the Sheriffs of our several Counties, or their Deputies, or any
Constable of any City or Town within our said Commonwealth

. . . . . . . . . . *7/13/03* . . . . . . . . . . GREETING.

WE command you to serve the below-described person or legal entity:

*286 Beacon Hill Realty Trust,*
*Bebak Bina,*
*Trustee*
*66 Charles St.*
*Boston, Mass. 02114,*

CITY OF BOSTON
Thomas M. Menino
Mayor

owner-occupant, tenant, or agent of property located in the City of Boston at:

*Ward 5    286 Cambridge St. — Apt. 7 — Christin Volan*
*723-2126*

The Commissioner of the Inspectional Services Department of the City of Boston has adjudged certain property which you own, manage, occupy or are in control of is in violation of 105 CMR 410.000 State Sanitary Code, Chapter II Minimum Standards of Fitness for Human Habitation. Authorized under Chapter 111, Section 127A of the Massachusetts General Laws or is in violation of other Massachusetts General Laws, or is in violation of certain ordinances of the City of Boston to wit:

VIOLATION

1. *Reg. 500. — Hallway in general — in disrepair — throughout unit — rotted ceiling walls; damaged kitchen window space; broken pane of living sash of left side living room window. Repair and/or Replace.*

2. *Reg. 500 — Unit hallway and living room floor finish — of the carpeting — in disrepair — badly worn finish and crumbling rug pad. Repair and/or Replace.*

3. *Reg. 500 — Kitchen floor in disrepair — missing tiles under kitchen window — Repair.*

4. *Reg. 351. — Stove / oven defective — worn finish of oven door and walls difficult to maintain in a clean and sanitary condition. Replace.*

HEREOF FAIL NOT, under penalty of law to comply with said Sanitary Code, within . . . . . *30* . . days.
(Signed under the pains and penalties of perjury.)

Inspector

No. *722*    *617-961-3308*

Commissioner
Boston Inspectional Services
Housing Inspection

*FAR APP. 21*

*APP. 131*

HID 28A Revised 9.99

(SEE REVERSE SIDE FOR FURTHER NOTICE)

Signed this *29th* *July* *2003*

*Page 2 of 2.*

# Commonwealth of Massachusetts

SUFFOLK, ss.

REFERENCE NO. *H.I. 034473.*

To the Sheriffs of our several Counties, or their Deputies, or any
Constable of any City or Town within our said Commonwealth:

*7/13/03* ............ GREETING.

WE command you to serve the below-described person or legal entity:

*286 Beacon Hill Realty Trust,*
*Babak Ems,*
*Trustee*

**CITY OF BOSTON**

Thomas M. Menino
Mayor

*66 Charles St.*
*Boston, Mass. 02114,*

owner-occupant, tenant, or agent of property located in the City of Boston at:

*Ward 5     286 Cambridge St - Apt 7 - Nelson*
*723-212*

The Commissioner of the Inspectional Services Department of the City of Boston has adjudged certain
property which you own, manage, occupy or are in control of is in violation of 105 CMR 410.000 State
Sanitary Code, Chapter II Minimum Standards of Fitness for Human Habitation. Authorized under Chapter
111, Section 127A of the Massachusetts General Laws or is in violation of other Massachusetts General
Laws, or is in violation of certain ordinances of the City of Boston to wit:

**VIOLATION**

5. *Reg. 500 - Walls in error! - in disrepair;*
   *kitchen wall, badly damaged -*
   *falling plaster; spall and loose*
   *studs; hole in bearing wall. Rebuild/repair.*
   *Repair walls to "as before" condition*

6. *Reg. 500 - Kitchen, living room and unit hall*
   *ceilings in disrepair - stained (holes)*
   *peeling paint. Repair.*

7. *Reg. 351 - Many electrical outlets defective -*
   *without face plates; toilet receptacle outlet*
   *not provided; defective fuses, receptacle*
   *of living room outlet to left of fireplace.*
   *Repair.*

8. *Reg. 500 - Unit hallway wall - missing access*
   *panel door for tub/shower. Replace.*

HEREOF FAIL NOT, under penalty of law to comply with said Sanitary Code, within. *30.* days.
(Signed under the pains and penalties of perjury.)

*Ken J. Gee*

*FAR. ADD. 22*

Inspector

Commissioner
Boston Inspectional Services
Housing Inspection

No. *732*     *617-961-3348.*

HID 28A Revised 9.99     (SEE REVERSE SIDE FOR FURTHER NOTICE)     *APP. +32*



# EMERGENCY
## Commonwealth of Massachusetts

*P. 3*

SUFFOLK, ss.                                    REFERENCE NO. ..................

*To the Sheriffs of our several Counties, or their Deputies, or any*
*Constable of any City or Town within our said Commonwealth:*

........................ 7/13/03 ........................, GREETING

WE command you to serve the below-described person or legal entity:

*286 Beacon Hill Realty Trust, Blake Bine,*
*66 Charles St., #300, Trustee*
*Boston, Mass       02114*

owner-occupant, tenant, or agent of property located in the City of Boston at:

*Ward 5    286 Cambridge St - Apt 7 - Charlene Nelson*

The Commissioner of the Inspectional Services Department of the City of Boston has adjudged certain property which you own, manage, occupy or are in control of, is, in violation of 105 CMR 410.000, State Sanitary Code, Chapter II Minimum Standards of Fitness for Human Habitation, Authorized under Chapter 111, Section 127A of the Massachusetts General Laws or is in violation of other Massachusetts General Laws, or is in violation of certain ordinances of the City of Boston to wit:

VIOLATION

1. *Reg 452 - NY smoke detector - missing/dwelling unit*
   *Install ceiling mounted smoke detector within sleeping area of unit*

2. *Reg 452 - Fire escape balcony - defective - left side platform grate is insecure - secure platform*

"By virtue of the authority granted under Chap. 1, Sec. 400.200[ ] of the Sanitary Code. I hereby notify you that an emergency condition exists and that above violations must be corrected to meet this emergency".

"It is hereby stated that violations may endanger or materially impair the health or safety, and well being of any tenant therein or persons occupying said property."

HEREOF FAIL NOT, under penalty of law to comply with said Sanitary Code, within 24 hours. (Signed under the pains and penalties of perjury.)

..........................................
Inspector

No. .... 722 .... 617 - 961 - 3308,

.......................................
Commissioner
Boston Inspectional Services

*FAR ADD 2*
*APP 133*

(SEE REVERSE SIDE FOR FURTHER NOTICE)

HID 28E Revised 2/00

I hereby certify under the penalty of perjury that the foregoing is a true copy of the report of the inspection issued by the Commissioner of Inspectional Services, City of Boston

Date 10/24/06

Construction Section of Records



Thomas ...
Mayor

BOSTON INSPECTIONAL SERVICES
HOUSING INSPECTION DIVISION
1010 MASSACHUSETTS AVENUE – FIFTH FLOOR
BOSTON, MASSACHUSETTS 02118
OFFICE (617) 635-5322   FAX: (617) 635-5383

Admin. Support Initials_____   Address not in MLOC_____   Case # 034473   H# 1

286 - 288

**Complainant/Occupant:**

Address: 286 Cambridge St
Floor: 5   Unit # 7
Name: Christine Nelson
Telephone #: 617 - 223 - 2126
Ward 5   BH   Zip: 02111

Owner/Agent Name: Baba Kira 286 Davis

Address: 66 Charles St # 301

City Boston   State Mass.   Zip 02114
Telephone #

1. ___ No Cause
2. ✓ Cause for Action 30
3. ✓ Legal Notice Allow ___ Days

Date Received:   Time:

Via:   Doorbells Work ✓ Yes ___ No

Children under Six of Age   ___ Yes ✓ No

Lead Determination Performed   ___ Yes ✓ No

Problem/Appointment   7/13/03

AM
PM ✓

4. ___ Case Already Reported
5. ___ Reinspection Appointment Date_____
6. _____

EMERGENCY INSPECTION___   GENERAL EXAMINATION ✓   LEAD INSPECTION___

OUTSIDE TEMPERATURE _____   INSIDE TEMPERATURE _____

REG 105 CMR 410

APP 24

APP 134

It is hereby stated that said violations may endanger or impair the health and/or well being of an occupant or the public.

_Christine Nelson_
Tenant/Occupant Signature

I hereby give permission to the Housing Inspection
Division to inspect these premises and have been
explained my rights regarding a comprehensive inspection.

Signed this 13th day of July, 20 03
under the pains and penalties of perjury by the
Inspector who inspected the above - described
premises.

_____ F. _____   722
Housing Inspector – City of Boston   Insp. #

COMPLAINANT'S COPY



# CITY OF BOSTON
## INSPECTIONAL SERVICES DEPARTMENT
1010 MASSACHUSETTS AVENUE
BOSTON, MA 02118
635-5322

### DIVISION OF HOUSING INSPECTION

### HEARING DECISION

Date 10/20/06

I hereby certify under the penalty of perjury that the foregoing is a true copy of the report of investigation issued by the Commissioner of Housing Inspection, of the City of Boston.

Jennifer Carruyuille

Custodian of Records

DATE _8/7/03_

CASE NO. _034473_

LOCATION _286 Cambridge St. #7_

REQUEST FOR EXTENSION OF TIME OR MODIFICATION DENIED _No_

PROSECUTION RECOMMENDED _No_

REQUEST FOR EXTENSION OF TIME ALLOWED _yes   30 days_

PROSECUTION RECOMMENDED IF VIOLATION EXISTS ON THAT DATE _____

VIOLATOR STATES WORK IS DONE, IF INSPECTION REVEALS WORK DONE, CASE IS CLOSED WITH WARNING. IF WORK IS NOT DONE PROSECUTION RECOMMENDED _____

VIOLATOR FAILED TO APPEAR. IF REINSPECTION REVEALS VIOLATION EXISTS, PROSECUTION RECOMMENDED _____

VIOLATOR REQUESTS CONTINUANCE UNTIL _September  13, 2003_

REQUESTS GRANTED UNTIL THIS DATE _yes_

DECISION MAILED THIS DATE TO OWNER(S) AT LEGAL ADDRESS _Given to Owner_

DECISION MAILED TO TENANT(S) AT LEGAL ADDRESS _yes_

DECISION GIVEN IN HAND THIS DATE _yes  to Owner_

ALL COMMUNICATIONS IN THIS REGARD SHOULD BE DIRECTED TO THE HOUSING INSPECTION DIVISION BY CALLING 635-5322.

_Paula Titus_

HEARING OFFICER

_Owner to give Tenant
24 hr notice to gain
access to make repairs._

_APP. 135_

_FAR. ADD. 225_

ISD HSG 12



# BOSTON INSPECTIONAL SERVICES DEPARTMENT

THOMAS M. MENINO
Mayor

### Housing  Division

KEVIN J. JOYCE
Commissioner

### Reinspection Summary Report

Ward: _5_     Case Number: _034473_     H Number: _____ _1_

Violation Address _286 Cambridge St._   Unit: _7_

Date of Reinspection:   Time:   Inspector:   Inspection Result:

_9/14/03_   _____   _R.P._   _Pros. Rec._

Recommendation:   _✓_   Prosecution Recommended

_____   Case Closed

_____   Unit Vacated

_____   Pre-Rental Recommended

_____   Condemnation Lifted

Signed this _18th_ day of _Nov._ ~~199~~ _2003_,
under the pains and penalties of perjury by the
inspector whose signature appears on the described
premises.

_Ronald F. Puccia_
Housing Inspector, City of Boston

Comments: _None of the 8 violations_
_has been corrected._
_Note: Complainent admits to_
_damaging bedroom wall._

Signature: _Ronald F. Puccia_   Date: _9/14/03_

FAR ADD. 26

LAL

APP. 136

X7497

Babak Bina v. Robert Haddad & Christine Nelson          Page 14
Boston Housing Court, 8/1/03, Docket# 0638

1   J:        I don't need those records now, sir.  I want to hear

2             from Mr. Bina.  Mr. Bina, what do you have to say?

3   BINA:     Your Honor, there are several things that Mr. Haddad

4             is alleging and many of them are not true.  You --

5             you -- the last thing you asked him, if he has looked

6             for a place.  He has been looking for a place now for

7             60 days.  He had promised that he would be out on

8             June 30th to the previous landlord.  I have been the

9             property owner for the past two weeks.

10  J:        When did you take over the property?

11  BINA:     On -- the papers were passed and the property was

12            closed on July 10th.

13  J:        Of this year?

14  BINA:     That's correct.

15  J:        I'm going to tell you something, Mr. Bina, you've

16            inherited a tenant with the property.  And you're

17            going to have to take proper legal action to remove

18            that tenant or those tenants if you wish.  This is

19            not proper legal action.  It's called summary

20            process.  You got to serve Mr. Haddad and perhaps

21            even Miss Nelson with a proper notice, giving them

22            notice you're terminating the tenancy and then

23            proceed with Court action to have them removed if

APP. 12                    FAR. ADD. 27

Babak Bina v. Robert Haddad & Christine Nelson    Page ~~17~~ 75
Boston Housing Court, 8/1/03, Docket# 0638

| | | |
|---|---|---|
| 1 | | they don't move on their own.  This agreement that he |
| 2 | | made with you really doesn't hold any water here. |
| 3 | BINA: | Your Honor, we -- we actually -- we actually did |
| 4 | | serve him under -- on -- on the same time we served |
| 5 | | him the temporary restraining order.  When I found |
| 6 | | out -- |
| 7 | J: | What type of a notice did you give him? |
| 8 | BINA: | A 30 day notice was served on him, sir.  When we |
| 9 | | realized that his gentleman's agreements -- |
| 10 | J: | So, you planned to proceed with Court action on that? |
| 11 | BINA: | Well, we have left -- we've been left with no choice. |
| 12 | | He's promised that he would leave time and time |
| 13 | | again. |
| 14 | J: | Tell me about this repair work that you need to have |
| 15 | | done. |
| 16 | BINA: | Well, if you will -- if you will see the estoppel |
| 17 | | certificate that Mr. Haddad had signed.  He had -- he |
| 18 | | had said that he -- he had no repairs that needed to |
| 19 | | be done in the apartment; that he was solely living |
| 20 | | there and nobody else was living there; and many |
| 21 | | other things.  And based on that I purchased this |
| 22 | | property, as I've got this estoppel certificate for |
| 23 | | many others because I didn't know who was living |

APP 73        FAR. ADD. 28

Babak Bina v. Robert Haddad & Christine Nelson          Page 12 *76*
Boston Housing Court, 8/1/03, Docket# 0638

1       there.  So, based on that, I trusted that document

2       and moved forward.  And based on conversations with

3       him, I moved forward in -- in agreeing for him to

4       stay until July 31st.  And he reneged on verbal

5       agreements and then -- and then I -- this Christine

6       Nelson kept harassing me.  And that's when I moved

7       forward to say, look, I'll even give you some money

8       if you move.  I certainly was not looking at that

9       being a legal notice.  I was looking as that being

10      the -- further documentation of a gentleman's

11      agreement that now he's got 60 days and he's got

12      money to go find someplace else.  He further actually

13      was -- been -- had been presented apartments for

14      rent.  He just simply did not want to accept to

15      moving to a studio rather than a one bedroom for the

16      same price he had been paying.  So, I -- I certainly

17      understand that legal notice is not what we had

18      agreed to, but we understood based on his present --

19      his representations that he would agree to move.  So,

20      I didn't -- we didn't think -- neither the previous

21      landlord that had known him for 25 years who was here

22      present, neither did I, that he would back out on

23      that.  When I realized on Thursday that he would back

App. 14

FAR. ADD. 29

Babak Bina v. Robert Haddad & Christine Nelson          Page 18  *77*
Boston Housing Court, 8/1/03, Docket# 0638

1          out on that, because he simply -- that's what I

2          understood.  That's when I said, "Well, I guess we're

3          going to have to serve him."

4    J:    Did you have an altercation with him on Thursday?

5    BINA: I beg your pardon.

6    J:    Did you have an altercation with him and Miss Nelson

7          on Thursday?

·8   BINA: I've had many altercations with Ms. Nelson.

9    J:    Let me tell you something, Mr. Bina -- and Mr.

10         Haddad.  You gentlemen have a problem.  OK?  And it's

11         not uncommon.  You've brought property in which

12         someone is living in and how you're having problems

13         with that someone.  I've described to you the action

14         you could take.  It's called summary process.  You've

15         obviously started that process by serving him with a

16         30-day notice.  This matter's going to come back to

17         Court another day, I'm sure right now because of the

18         summary process action.  Mr. Haddad has the right,

19         and perhaps Miss Nelson as well, despite the order

20         from BMC, she's got a separate order to stay away.

21         That's something she's got to comply with, Mr.

22         Haddad.  But in the meantime, he's got a right to

23         stay there until that summary process action

*APP. 15*

*FAR. ADD. 30*

Babak Bina v. Robert Haddad & Christine Nelson          Page ~~84~~ 78
Boston Housing Court, 8/1/03, Docket# 0638

```
 1              proceeds.  Mr. Bina, I am not satisfied with what

 2              I've heard.  I'm not going to grant your request

 3              today.  I'm denying the application for temporary

 4              restraining order.  Whatever repairs you're talking

 5              about, you'll get done eventually I'm sure once this

 6              summary process action is settled.  Mr. Haddad, I

 7              know you've got a lot of things you want to show me,

 8              but I'm not going to take them up with you today.

 9              I'm denying the request of Mr. Bina.  I am not going

10              to order you to stop allegedly harassing him or Miss

11              Nelson to stay off the property.  This matter's going

12              to be decided by the Court in the appropriate forum,

13              which is a summary process action.  You're both going

14              to be back here I'm sure in this eviction action.

15              This request today is denied.

16  HADDAD:    I'm sorry, I didn't --

17  J:         I've denied his request.

18  HADDAD:    Right.  But I didn't hear what you said about the

19              restraining order pertaining to myself and my wife.

20  J:         No.  I said you obviously have a restraining order

21              that's been issued against Miss Nelson by the Boston

22              Municipal Court.

23  HADDAD:    Yes.
```

*FAR. ADD. 31*

*APP. 16*

*A*

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss

HOUSING COURT DEPARTMENT
BOSTON DIVISION
Docket No.: 03 SP 3609

BABAK BINA,                          )
              Plaintiff,             )
                                     )
v.                                   )        SUMMARY PROCESS
                                     )        ANSWER AND COUNTERCLAIMS
ROBERT HADDAD, and                   )
CHRISTINE NELSON,                    )
              Defendants.            )

ORIGINAL TRIAL DATE: September 25, 2003
**RESCHEDULED TRIAL DATE: October 9, 2003**

**DENIAL OF LANDLORD'S CLAIMS**

1)    The Defendant, Robert Haddad, hereinafter referred to as the "Tenant," admits
      occupying the premises located at 286 Cambridge Street, Apt. #7, in Boston,
      Massachusetts, but denies that he occupies the premises unlawfully or against the
      right of the Plaintiff, Babak Bina, hereinafter referred to as the "Landlord." The
      Defendant, Christine Nelson, hereinafter referred to as the "Tenant," denies
      occupying the premises located at 286 Cambridge Street, Apt. #7 in Boston,
      Massachusetts as she was forced to leave the premises on July 28, 2003 as a result
      of false, slanderous, and defamatory accusations of assault by the Landlord.

FIRST DEFENSE: FAILURE TO PROPERLY COMMENCE THE ACTION

2)    The Landlord has not properly served the Tenants with process or otherwise
      complied with requirements of law governing the initiation of a summary process
      action.

SECOND DEFENSE: FAILURE TO PROPERLY TERMINATE TENANCY

3)    The Tenants' tenancy was not properly terminated by the Landlord prior to the
      commencement of this action.

ARP 23                    FAR-ADD. 32



*PAGE 5*

## THIRD DEFENSE: FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

4)      The Landlord has failed to state a claim upon which relief can be granted.

### FOURTH DEFENSE: NO SUPERIOR POSSESSORY RIGHTS

5)      The Landlord's possessory rights in this action are not superior to the Tenants. Therefore, the Landlord is not entitled to recover possession.

### FIFTH DEFENSE: RETALIATION

6)      The Landlord has taken reprisal against the Tenants by filing this instant action because the Tenants complained about the conditions of the premises to the Boston Inspectional Services.

7)      The Tenants further claim the statutory presumption that the Landlord has retaliated against the Tenants because the Landlord sent a notice to quit and brought the instant summary process action and attempted to materially alter the terms of this tenancy within six (6) months after the Tenants did the act set forth in paragraph seven (6) above.

8)      Therefore, the eviction is retaliatory under M.G.L. c. 239 § 2A and the Landlord cannot recover possession.

### SIXTH DEFENSE: CONDITION OF THE PREMISES

9)      This action was brought pursuant to a notice to quit or where the tenancy was terminated without fault of the Tenants or occupants.

10)     The following conditions have existed at some time during the course of the tenancy:

   a) The windows throughout the unit are in disrepair with rotted window sills and damaged windows;
   b) The hallway and living room floor is in disrepair with badly worn furnish and crumbling rug pad;
   c) The kitchen floor is in disrepair with missing tiles under the kitchen window;
   d) The stove and oven are defective;
   e) The walls throughout the unit are in disrepair with badly damaged walls, and holes ;
   f) The kitchen, living room, and hall ceilings are in disrepair and have stains, holes and peeling paint;
   g) Several electrical outlets are defective and the kitchen counter outlet is not grounded;

2

*APP-24*

*FAR. ADD. 33*

PAGE 6

h) The hallway wall is missing an access panel door for the tub/shower;
i) The unit does not have smoke detectors; and
j) The platform on the balcony of the fire escape is not secure.

11) The Tenants are not legally obligated to pay rent because of conditions of disrepair in or around the premises, which may endanger or materially impair the health, safety, and well-being of the Tenants. Neither the Tenants nor anyone in the Tenants' household caused these problems, and all necessary repairs can be made without the Tenants leaving the premises. The Landlord knows or should know about these conditions; however, the Landlord has not properly repaired them. The current conditions of disrepair include, but are not necessarily limited to:

a) The windows throughout the unit are in disrepair with rotted window sills and damaged windows;
b) The hallway and living room floor is in disrepair with badly worn furnish and crumbling rug pad;
c) The kitchen floor is in disrepair with missing tiles under the kitchen window;
d) The stove and oven are defective;
e) The walls throughout the unit are in disrepair with badly damaged walls, and holes ;
f) The kitchen, living room, and hall ceilings are in disrepair and have stains, holes and peeling paint;
g) Several electrical outlets are defective and the kitchen counter outlet is not grounded;
h) The hallway wall is missing an access panel door for the tub/shower;
i) The unit does not have smoke detectors; and
j) The platform on the balcony of the fire escape is not secure.

12) Therefore under M.G.L. c. 239 § 8A and the common law of implied warranty of habitability, the Landlord cannot evict the Tenants.

## SEVENTH DEFENSE: CLAIMS AGAINST LANDLORD

13) The Tenants have claims against the Landlord arising out of the tenancy. These include:

a) Breach of the Covenant of Quiet Enjoyment;
b) Retaliation;
c) Intentional or Negligent Failure to Maintain the Premises;
d) Intentional or Reckless Infliction of Emotional Distress;
e) Breach of the Warranty of Habitability: and
f) Violations of M.G.L. C. 93A.

14) Therefore, under M.G.L. c. 239 § 8A, the Landlord cannot evict the Tenants.

APP. 25

FAR. ADD. 34

## COUNTERCLAIMS

15) The Tenants assert by way of counterclaim against the Landlord, pursuant to Rule 5 of the Uniform Summary Process Rules and Mass.R.Civ.P. 13(b) the following counterclaims as affirmative defenses to the Landlord's claim for possession, and for their own damages:

### FIRST COUNTERCLAIM: INTERFERENCE WITH QUIET ENJOYMENT OF THE PREMISES

16) The Landlord directly or indirectly interfered with the Tenants' quiet enjoyment of the premises by failing to provide and maintain the premises in compliance with applicable law.

17) As a result, the Tenants claim the greater of actual damages, or three month's rent in the amount of $2,400.00 for each breach of his quiet enjoyment, plus the costs of this action and reasonable attorney's fees.

### SECOND COUNTERCLAIM: BREACH OF WARRANTY OF HABITABILITY

18) The Landlord has expressly or impliedly warranted to provide and keep the premises in good repair, in compliance with all applicable laws and regulations, and in all other respects fit for habitation. Because of the following conditions, the Landlord has breached the implied warranty of habitability:

   a) The windows throughout the unit are in disrepair with rotted window sills and damaged windows;
   b) The hallway and living room floor is in disrepair with badly worn furnish and crumbling rug pad;
   c) The kitchen floor is in disrepair with missing tiles under the kitchen window;
   d) The stove and oven are defective;
   e) The walls throughout the unit are in disrepair with badly damaged walls, and holes ;
   f) The kitchen, living room, and hall ceilings are in disrepair and have stains, holes and peeling paint;
   g) Several electrical outlets are defective and the kitchen counter outlet is not grounded;
   h) The hallway wall is missing an access panel door for the tub/shower;
   i) The unit does not have smoke detectors; and
   j) The platform on the balcony of the fire escape is not secure.

19) As a result of the Landlord's breach of warranties, the Tenants suffered damages in the amount of the difference between the fair market value of the premises in good repair and in compliance with all applicable laws and regulations and the

*PAGE 8*

value of the premises in disrepair and any damages to the Tenants which are the consequences of the Landlord's breach of Warranties.

## THIRD COUNTERCLAIM: RETALIATION

20)   The Landlord retaliated against the Tenants for exercising their rights as described above under DEFENSE: RETALIATION.  Therefore, the Tenants are entitled under M.G.L. c.186 § 18 to damages of at least three month's rent of $2,400.00 plus the costs of this action and reasonable attorney's fees.

## FOURTH COUNTERCLAIM: NEGLIGENT FAILURE TO MAINTAIN PREMISES

21)   Throughout the Tenants' tenancy, the Landlord negligently failed to maintain and keep the premises in good repair and condition all of which has caused the Tenants to suffer injury, inconvenience, expense, discomfort, great anxiety, distress and upset.

22)   The conditions which the Landlord has failed to maintain and/or repair existed at the inception of the tenancy and include, but are not necessarily limited to, the following:

   a)  The windows throughout the unit are in disrepair with rotted window sills and damaged windows;
   b)  The hallway and living room floor is in disrepair with badly worn furnish and crumbling rug pad;
   c)  The kitchen floor is in disrepair with missing tiles under the kitchen window;
   d)  The stove and oven are defective;
   e)  The walls throughout the unit are in disrepair with badly damaged walls, and holes ;
   f)  The kitchen, living room, and hall ceilings are in disrepair and have stains, holes and peeling paint;
   g)  Several electrical outlets are defective and the kitchen counter outlet is not grounded;
   h)  The hallway wall is missing an access panel door for the tub/shower;
   i)  The unit does not have smoke detectors; and
   j)  The platform on the balcony of the fire escape is not secure.

23)   The Tenants have suffered actual and consequential damages as a result of the Landlords failure to maintain the premises as described above.  The full extent of the Tenants' damage is not ascertainable at this time.

*FAR ADD. 36*

*PAGE 9*

## FIFTH COUNTERCLAIM: INTENTIONAL OR RECKLESS INFLICTION OF EMOTIONAL DISTRESS

24)   The Landlord by his acts and failures as set out above caused the Tenants' severe emotional upset and anxiety in that:

    a) The Landlord intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct;

    b) The Landlord's conduct was extreme and outrageous under the circumstances; and

    c) The emotional distress sustained by the Tenants was severe.

25)   The Tenants suffered actual and consequential damages as a result of the Landlord's intentional infliction of emotional distress.  The full extent of the Tenants' damage is not ascertainable at this time.

## SIXTH COUNTERCLAIM: UNFAIR AND DECEPTIVE PRACTICES

26)   The Landlord is in the trade or business of renting residential housing and has, throughout this tenancy, engaged in unfair and deceptive practices within the meaning and scope of M.G.L. c.93A and the Attorney General's regulations published to enforce this law.  These unfair and deceptive practices listed below have included, but are not necessarily limited to, the actions and failures to act as set out above in the Answer and in all the Counterclaims stated above.

    a) The Landlord failed within a reasonable time after notice to make repairs in accordance with pre-existing representations in violation of 940 C.M.R. 317 (1) (e);

    b) The Landlord failed to provide services after the making of any representation or agreement that such services would be performed in violation of 940 C.M.R. 317 (1) (f);

    c) The Landlord breached the implied warranty of habitability in violation of 940 C.M.R. 3.08(2);

    d) The Landlord retaliated against the Tenants for exercising rights in violation of 940 C.M.R. 3.17(6)(b);

    e) The Landlord illegally attempted to drive the Tenants from the premises within fifteen (15) days in violation of their rights as Tenants with an Agreement that was previously deemed void by Justice Kyriakakis;

*APP. 28*

*FAR. ADD. 37*

f) The Landlord called the police on the Tenants on several occasions without just cause or reason, slandered the Tenants to third parties, accused Ms. Nelson of breaking and entering and trespass, scratched Ms. Nelson's name off of the mailbox to deprive her of lawfully receiving mail, and brought false, slanderous, and defamatory accusations of assault against Ms. Nelson in an attempt to force her out of the premises through the criminal process.

27)   All of the Landlord's unfair and deceptive practices were willful and knowing within the meaning of M.G.L. c.93A. Therefore, the Tenants claim three, but not less than two, times all damages awarded or that could be awarded pursuant to M.G.L. c.93A.

## SEVENTH COUNTERCLAIM: VIOLATION OF THE MASSACHUSETTS CIVIL RIGHTS ACT

28)   The Landlord is attempting to deprive the Tenant of their rights secured by the Constitution or laws of the United States or the Commonwealth of Massachusetts by threats, intimidation or coercion, in violation of G.L. c. 12, § 11I.

29)   Therefore, the Tenants are entitled to damages resulting from the Landlord's conduct, along with costs and reasonable attorney's fees.

## EIGHTH COUNTERCLAIM: VIOLATION OF THE CIVIL RIGHTS ACT OF 1871

30)   The Landlord is attempting, under color of state law, to deprive the Tenant of their rights secured by the Constitution or laws of the United States, in violation of the Civil Rights Act of 1871, 42 U.S.C. §1983.

31)   Therefore, the Tenants are entitled to all damages resulting from the Landlord's actions, along with costs and reasonable attorney's fees, 42 U.S.C. §1988.

32)   Because the Landlord's actions were intentional or malicious, or were in reckless disregard of the Tenants' rights under Federal Law, the Tenants are also entitled to punitive damages.

WHEREFORE, the Tenants request that this Honorable Court:

1)   Enter judgment for possession of the leased premises for the Tenants;

2)   Order the Landlord to repair any defective or substandard conditions that are found to exist in the Tenants' apartment at the time of trial;

3)   On the COUNTERCLAIM: INTERFERENCE WITH THE QUIET ENJOYMENT OF THE PREMISES, award the Tenants the greater of actual

damages, or three months rent in the amount of $2,400.00 per violation, plus costs of this action and reasonable attorney's fees;

4)    On the COUNTERCLAIM: BREACH OF WARRANTY OF HABITABILITY, award the Tenants damages based upon the nature, duration and seriousness of the defects and equal to the total difference between the value of the use and enjoyment of the premises as warranted to be habitable and the value of the use and enjoyment in their defective condition, from commencement of the tenancy to the present;

5)    On the COUNTERCLAIM: RETALIATION award the Tenants three month's rent of $2,400.00, plus costs of this action and reasonable attorney's fees;

6)    On the COUNTERCLAIM: NEGLIGENT FAILURE TO MAINTAIN THE PREMISES award the Tenants damages for the Landlord's negligent failure to maintain the premises;

7)    On the COUNTERCLAIM: INTENTIONAL OR RECKLESS INFLICTION OF EMOTIONAL DISTRESS award the Tenants damages for the Landlord's intentional infliction of emotional distress;

8)    On the COUNTERCLAIM: UNFAIR AND DECEPTIVE PRACTICES award Tenants damages for the Landlord's willful violations of M.G.L. c.93A § 2, and regulations promulgated thereto; plus reasonable attorney's fees;

9)    On the COUNTERCLAIM: VIOLATION OF THE MASSACHUSETTS CIVIL RIGHTS ACT award Tenants damages for the Landlord's willful violations of G.L. c. 12, § 11I, plus reasonable attorney's fees;

10)   On the COUNTERCLAIM: VIOLATION OF THE CIVIL RIGHTS ACT OF 1871 award Tenants damages for the Landlord's willful violations of 42 U.S.C. §1983, plus reasonable attorney's fees; and

11)   Order such other and further relief as the Court deems just and proper.

PAGE 12

ROBERT HADDAD, and
CHRISTINE NELSON
By their attorney,

Dated: September 19, 2003

Jenifer DeCristofaro, Esq.
Lovenberg & Associates
11 Beacon Street, Suite 625
Boston, MA  02108
(617) 973-9948
B.B.O. # 644564

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the above document to be served upon the Plaintiff, Babak Bina, at 66 Charles Street, Apt. #30, Boston, MA 02114 by in-hand delivery via messenger on September 19, 2003.

Jenifer DeCristofaro

9

APP. 31

FAR. ADD. 40

Document B                    RECORD APPENDIX        P. 41
                                   (WHITE)

## TRIAL EXHIBIT LIST

Plaintiff: Babak Bina              Defendant Robert Nunlel

Date:      10/9/03                 Docket #:  03-SP-03605

Exhibit  I.D            Description"

| | | |
|---|---|---|
| 1 | | Estoppel Certificate dated 7/9/03. |
| 2 | | Agreement dated 7/15/03 |
| 3 | | Notice To Quit dated 7/25/03 |
| 4 | | 14 day Notice To Quit dated 8/1/03 |
| 5 | | 3 letters dated 8/9/03, 8/31/03, & 7/10/03 |

APP. 100          FAR ADD. 41

(18)

<u>(SUMMARY PROCESS 03-/0/3/6/0/9/)</u>          <u>(BINA V. HADDAD, ET AL)</u>

Haddad would be compensated in the amount of **$1,600.00** in return for his agreement to move out by July 2003 (Ex. 2). Defendant Haddad had earlier agreed to move out by the end of July but had second thoughts as a result of difficulty in locating housing. On July 13, 2003, Inspectional Services was called. (The Court notes that the defendant Haddad did not produce any notice of violations regarding the unit from the Inspectional Services). In addition, just prior to the July 15th Agreement and subsequent thereto in July, altercations, verbal, physical, and legal, between the plaintiff and the defendants ensued. The police were contacted on at least two (2) occasions and defendant Nelson was arrested by the police in late July at the premises.

Plaintiff served defendant Haddad and an "unauthorized Jane Doe" with a thirty (30) day notice to quit, dated July 25, 2003 (Ex. 3). Plaintiff testified at trial that he served the notice to quit prior to July 30, 2003, in order to insure his abiljty to regain possession of the premises if the defendants did not vacate under the July 15th Agreement. Defendant Haddad did not so vacate, although he testified at trial that defendant Nelson did move out in late July.

The plaintiff also served the defendants with a fourteen (14) day notice to quit for non-payment of rent, dated August 1, 2003 (Ex. 4), although plaintiff acknowledged at trial that rent was subsequently paid for August. (Rent by defendant Haddad has also been paid for September and October and therefore no rent was sought at the time of trial.)

The defendants' Answer and Counterclaims, dated September 19, 2003, have been considered by the Court. The Court finds that there was no testimony produced at trial to support any of such defenses or counterclaims. Accordingly, the Court finds and rules that the plaintiff has shown his case for possession of the premises under the thirty (30) day notice to quit for a tenancy at will.

Defendant's testimony at trial emphasized his efforts to seek alternative housing and his currently being without a job. The defendant also, following the trial, submitted to the Court ex-

2

APP. 33          FAR ADD. 42

Babak Bina v. Robert Haddad & Christine Nelson         Page 39 140
Boston Housing Court, 10/9/03, Docket #3609

1   A:   He said it to me.

2   RUSSO:    Objection.

3   J:   He's not here.  That's hearsay, Mr. Haddad.  He can't

4        testify.

5   DICHRISTAFARO:  I have no further questions, Your Honor.

6   J:   All right.  You all set?

7   RUSSO:    Plaintiff rests, Your Honor.

8   J:   Pardon?

9   RUSSO:    Plaintiff rests.

10  J:   Thank you, Mr. Haddad.  I may assume that the defendant

11       rests?

12  DICHRISTAFARO:  Yes.

13  RUSSO:    That is the case, Judge, I'd like at this point in

14       time to ask for a directed finding on the defendant's

15       counter-claims.  I've not heard any evidence of a breach

16       of quiet enjoyment of the premises; none were introduced.

17       There was no evidence of breach of warranty of

18       habitability.  There was no evidence of intentional

19       reckless infliction of emotional distress.

20  J:   Just a minute, Mr. Russo.  What -- are you looking at the

21       first counter-claim?

22  RUSSO:    First counter-claim.  Interference with quiet

23       enjoyment.

APP. 95                    FAR ADD 43

Babak Bina v. Robert Haddad & Christine Nelson          Page 
Boston Housing Court, 10/9/03, Docket #3609

1    J:    OK.

2    RUSSO:    There was no evidence that I heard that my client

3          interfered with Mr. Haddad's quiet enjoyment.  I heard no

4          evidence of relative to breach of warranty of

5          habitability.  There was no evidence of intentional

6          infliction of emotional distress.  There were no medical

7          reports or medical bills.  There was no evidence of

8          violation of Chapter 93A.  There was no evidence of

9          violation of Massachusetts Civil Rights Act and there was

10          no evidence of violation of the Civil Rights Act of 1871.

11          I ask for a directed finding in behalf of the plaintiff on

12          defendant's counter-claims, Your Honor.

13    J:    Well, you didn't mention the third and fourth counter-

14          claim.  Is that right?

15    RUSSO:    Yes, I mentioned all of them.  All the counter-

16          claims.  There was no evidence introduced whatsoever.

17    J:    OK, when you were just talking, I think you --

18    RUSSO:    I'm sorry.

19    J:    You did not mention retaliation or negligent failure to

20          maintain.

21    RUSSO:    Yes I am.

22    J:    But you mean to ask for a directed finding on all --

23    RUSSO:    Counter-claims.  That is correct.

_APP. 96_          FAR. ADD. 44

*DOCUMENTS  A*

*RECORD*
*APPENDIX*

Babak Bina v. Robert Haddad & Christine Nelson                    Page ~~2~~ 142
Boston Housing Court, 10/9/03, Docket #3609

1    J:    On the counter-claims.

2    RUSSO:    Not defenses, Judge, on the counter-claims.

3    J:    I understand.  Counsel?

4    DICHRISTAFARO:  It's clear that I would object to that, Your

5          Honor.  I believe we have presented evidence that as far

6          as the harassment of Mr. Haddad and his ex-wife, co-tenant

7          -- whatever you want to call her -- that that was, number

8          one, intentional infliction and absolutely harassing him;

9          number two, there was retaliation in that he did not -- he

10         filed a notice to quit and served it after Mr. Haddad had

11         called the Inspectional Services.  Inspectional Services

12         came and found Housing Code violations in the property.

13         Especially the quiet enjoyment, Your Honor, is when the

14         cops are coming almost every week to the apartment, that

15         is affected.  So I would just oppose that.

16   J:    OK, I'll take that under advisement.

17   RUSSO:    Thank you, Your Honor.

18   J:    Anything else?

19   RUSSO:    No, Your Honor.

20   J:    The parties want to submit proposed findings or rulings of

21         law?  I'm not asking you to.  If you wish to, you may.

22   DICHRISTAFARO:  No.

23   J:    No.  Mr. Russo?

*APP. 98*                    *FAR.ADD. 45*

Babak Bina v. Robert Haddad & Christine Nelson          Page ~~68~~ *143*
Boston Housing Court, 10/9/03, Docket #3609

1   RUSSO:    No, Your Honor.

2   J:    All right.  Very good.

3   DICHRISTAFARO:  Thank you very much.

4   J:    Thank you.  The Court will take the matter under

5         advisement.

6

7   (break in tape)

8

9   J:    The parties are seeking, very briefly.

10  RUSSO:    Well, for the plaintiff, Judge, I'm asking that the

11        Court grant us immediate possession of the property in

12        accordance with the notice of termination that was served

13        upon Mr. Haddad back in July of 2003.

14  J:    You're seeking possession?

15  RUSSO:    That's correct, Your Honor.

16  J:    No rent?

17  RUSSO:    Well, if the Court is inclined to give Mr. Haddad a

18        stay in accordance with the statute, I would ask that rent

19        be imposed at a fair market value, which is not $800, but

20        $1300, Your Honor.

21  J:    What's the evidence for that?

22  RUSSO:    The evidence is the fact that Mr. Haddad had

23        testified that allegedly Mr. Bina had raised -- was going

~~APP. 98~~                    *FAR. ADD 46*

Babak Bina v. Robert Haddad & Christine Nelson         Page ~~2~~ *144*
Boston Housing Court, 10/9/03, Docket #3609

1        to raise his rent $500 and he agreed to pay it, as he

2        testified on the stand.  Therefore, it's my contention if

3        he's agreed to pay it, then this Court should order him to

4        pay $1300, which he feels the apartment is worth.

5   J:   OK.  And you're obviously denying the counter-claims?

6        That's your position?

7   RUSSO:   Yes, Your Honor.

8   J:   OK.  Ms. DiChristafaro?

9   DICHRISTAFARO:   Your Honor --

10  J:   What are you seeking from the Court?

11  DICHRISTAFARO:  We're seeking damages at your discretion.  As

12       for the counter-claims, we're also seeking that he

13       continue to remain in the premises for a period at your

14       discretion, preferably six months to a year, taking into

15       account Mr. Haddad's age and his financial ability at this

16       time.  And also, that he continue paying rent of course,

17       at the rate that he is paying now, $800 a month, during

18       which -- for whatever time you may find (inaudible).

19  J:   OK.  Very good.

20  RUSSO:   Thank you, Your Honor.

21  DICHRISTAFARO:  Thank you.

22

23  END OF HEARING

*APP. 99*

*FAR ~~ADD 46~~*

*FAR ADD 47*